IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHEL THOMPSON and GEORGE HIGGINS, on behalf of themselves and those similarly situated,<br>Plaintiffs,<br>v.<br>BPS OPCO, INC. (d/b/a BrandPoint Services) and DOLGENCORP OF TEXAS, INC. (d/b/a/ Dollar General),<br>Defendants. | CIVIL ACTION<br><br>FIELD ELECTRONICALLY ON MARCH 31, 2022<br><br>CLASS/COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT - CLASS/COLLECTIVE ACTION

Plaintiffs Michel Thompson ("Thompson") and George Higgins ("Higgins") bring this action against Defendants BPS OPCO, Inc. (which does business under the trade name BrandPoint Services and is referred to herein as "BrandPoint") and Dolgencorp of Texas, Inc. (hereafter "Dollar General"), alleging that Defendants have jointly and severally failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.* Plaintiffs bring their FLSA claim as a collective action under 29 U.S.C. § 216(b), and their PMWA claim as a class action under Federal Rule of Civil Procedure 23.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has subject matter jurisdiction over the PMWA claim pursuant to 28 U.S.C. § 1367.

3. This Court has personal jurisdiction over BrandPoint because, *inter alia*, it is

1

registered to do business in Pennsylvania, it is headquartered in Pennsylvania, and it regularly conducts business in Pennsylvania.

4. This Court has personal jurisdiction over Dollar General because, *inter alia*, it is registered to do business in Pennsylvania and it regularly conducts business in Pennsylvania.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391 because, *inter alia*, BrandPoint is headquartered in this judicial district and, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in this district.

## PARTIES

6. Thompson is an individual residing in Texas.

7. Higgins is an individual residing in Texas.

8. Thompson and Higgins are referred to collectively as "Plaintiffs."

9. BrandPoint is a corporate entity registered to do business in Pennsylvania and headquartered in Trooper, PA (Montgomery County).

10. Dollar General is a corporate entity registered to do business in Pennsylvania and headquartered in Goodlettsville, TN.

11. BrandPoint and Dollar General are referred to collectively as "Defendants."

12. Defendants employ individuals, including Plaintiffs, engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce.

13. Defendants (each of which has annual gross volume of sales made or business done exceeding $500,000) are "enterprises" engaged in commerce or in the production of goods for commerce because they employ individuals who handle, sell, and/or otherwise work on goods that have been moved in or produced for commerce.

## FACTS

14. BrandPoint, according to its website, is a "National Merchandising Company" that hires "Traveling Merchandisers," who "are willing to travel to various retail locations and work in a fast-paced environment."[1]

15. Dollar General, according to its most recent Annual Report, is "among the largest discount retailers un the United States . . . with 18,190 stores located in 47 states."

16. Dollar General partners with BrandPoint to assist with "Lifecycle Remodels" (hereafter "remodels") at its retail stores.

17. Traveling merchandisers perform manual labor associated with the Dollar General remodels. Traveling merchandisers' work is performed in the stores and generally includes, *inter alia*: (i) removing merchandise from store shelves; (ii) moving shelving units to assigned locations according to BrandPoint's and Dollar General's instructions; (iii) building shelving units in designated locations within the stores; and (iv) re-stocking the store shelves with product. Many of these duties are performed pursuant to "planograms" designed by Dollar General and jointly implemented by Dollar General and BrandPoint. While traveling merchandisers' work is physically demanding, it requires no special skills beyond those quickly and easily learned at the job site.

18. During a typical remodel, Dollar General's representative (often called a "DG Merchandiser") and BrandPoint's representative (often called a "Team Lead") jointly supervise and direct traveling merchandisers' day-to-day work. As such, both Defendants enjoy the right to control (and actually control) the manner in which traveling merchandisers perform their work.

---

[1] https://brandpointservices.com/vendor-network/traveling-merchandiser/ (last reviewed 3/28/22).

19. Remodels generally are conducted pursuant to a detailed "Lifecycle Remodel Process Guide" ("Remodel Guide") that is published by Dollar General and outlines the remodel process and procedures.

20. Dollar General can direct BrandPoint to terminate any traveling merchandiser whose work is deemed unacceptable.

21. Defendants provide traveling merchandisers with the tools required for the remodel work.

22. The work performed by traveling merchandisers is an integral part of the businesses of both BrandPoint (which purports to be a "National Merchandising Company") and Dollar General (which owns and operates the retail stores within which the traveling merchandisers work).

23. Traveling merchandisers have no meaningful opportunity for profit or loss based on their managerial skill. On the contrary, the position requires no managerial skill.

24. BrandPoint requires traveling merchandisers to sign an "Independent Contractor Agreement" that classifies them as non-employee contractors. *See*, *e.g.*, Exhibit A. Regardless, a worker's employment status under the FLSA and PMWA depends on the outcome of a six-factor "economic reality" test rather than the terms of a written contract. *See*, *e.g.*, *Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 142-43 (3d Cir. 2020); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229-30 (3d Cir. 2019). "Notably, none of these factors asks whether the worker signed an agreement stating that she is an 'independent contractor,' as [BrandPoint] asked of the [Traveling merchandisers] here. That is not surprising [since] the whole point of the FLSA and the PMWA is to protect workers by overriding contractual relations through statute." *Id.* at 229.

25. Here, based on facts that are summarized above and will be further explored

4

during discovery, the trier of fact can reasonably conclude that the following six "economic reality" factors weigh in favor of a finding that Plaintiffs and other traveling merchandisers are Defendants' joint employees: "(1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon [her] managerial skill; (3) the alleged employee's investment in equipment or materials required for [her] task, or [her] employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; [and] (6) whether the service rendered is an integral part of the alleged employer's business." *Verma*, 937 F.3d at 229 (quoting *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

26. Both the Remodel Guide and the Independent Contractor Agreement provide that traveling merchandisers must work well over 40 hours during two of every three weeks. *See, e.g.*, Exhibit A at § 2(d).

27. Traveling merchandisers do not receive any overtime premium pay for hours worked over 40 per week.

28. From approximately June 2021 until approximately November 2021, Thompson worked for Defendants as a traveling merchandiser pursuant to the general terms and conditions of employment described in paragraphs 14-27 *supra*.

29. Thompson regularly worked over 60 hours per week and, like other traveling merchandisers, received no overtime wages for hours worked over 40.

30. From approximately February 2020 until approximately November 2020, Higgins worked for Defendants as a traveling merchandiser pursuant to the general terms and conditions of employment described in paragraphs 14-27 *supra*.

31. Higgins regularly worked over 60 hours per week and, like other traveling merchandisers, received no overtime wages for hours worked over 40.

32. In failing to pay overtime wages to Plaintiffs and other traveling merchandisers, Defendants violated the PMWA and acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## CLASS AND COLLECTIVE ALLEGATIONS

33. Defendants' failure to pay overtime wages to Plaintiffs and other traveling merchandisers reflects joint business policies and practices that do not depend on the personal circumstances of individual employees. As such, Plaintiffs are similarly situated to other traveling merchandisers who, like Plaintiffs, were classified as non-employee contractors and denied overtime wages.

34. Plaintiffs' FLSA claim should proceed as a collective action and their PMWA claim should proceed as a class action on behalf of:

> **All traveling merchandisers and other individuals (regardless of job title) who, during any week within the past three years, were paid by BPS OPCO, Inc. (a.k.a. BrandPoint Services) or any related business entity to perform rebuilds at Dollar General retail stores.**

35. Plaintiffs' FLSA claim should proceed as a collective action because they and other putative collective members, having worked pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

36. Class action treatment of Plaintiffs' PMWA claim is appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

37. The class, upon information and belief, includes over 100 individuals, all of whom are readily ascertainable based on business records and are so numerous that joinder of all

.
.

class members is impracticable.

38. Plaintiffs are class members, their claims are typical of the claims of other class members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

39. Plaintiffs and their lawyers will fairly and adequately represent the class members and their interests.

40. Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' common compensation policies, as described herein. The legality of these policies will be determined through the application of generally applicable legal principles to common facts.

41. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT I – FLSA

42. The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week. *See* 29 U.S.C. § 207(a)(1).

43. Plaintiffs and other collective members are employees entitled to the FLSA's protections, and Defendants are employers required to comply with the FLSA.

44. In failing to pay overtime wages to Plaintiffs and other collective members for hours worked over 40 per week, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions. As such, Defendants are jointly and severally liable for violating

the FLSA rights of Plaintiffs and other collective members.

## COUNT II – PMWA[2]

45. The PMWA requires that employees receive overtime premium compensation "not less than one and one-half times" the employee's regular pay rate for hours worked over 40 per week. *See* 43 P.S. § 333.104(c).

46. Plaintiffs and other class members are employees entitled to the PMWA's protections, and Defendants are employers required to comply with the PMWA.

47. In failing to pay overtime wages to Plaintiffs and other class members for hours worked over 40 per week, Defendants violated the PMWA. As such, Defendants are jointly and severally liable for violating the PMWA rights of Plaintiffs and other class members.

## JURY DEMAND

Plaintiffs demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and other collective/class members, demand:

A. Issuance of notice to all members of the FLSA collective, as defined at paragraph 34 *supra*;

B. Certification under Federal Rule of Civil Procedure 23 of the PMWA class, as defined at paragraph 34 *supra*;

C. Judgment against Defendants for an amount equal to Plaintiffs' and other collective/class members' unpaid overtime wages;

D. An amount equaling the overtime wages as liquidated damages under the FLSA;

E. Prejudgment interest;

---

[2] Plaintiffs submit that the PMWA applies to themselves and other class members due to a Pennsylvania choice of law provision in the Independent Contractor Agreement. *See* Exhibit A at § 9.

8

    F.  All costs and attorney's fees incurred prosecuting this action;

    G.  Such further relief as the Court deems just and equitable.

Dated:  March 31, 2022            Respectfully Submitted,

                                    Josef F. Buenker (*pro hac vice* admission anticipated)
The Buenker Law Firm
P.O. Box 10099
Houston, Texas 77206
(713) 868-3388
jbuenker@buenkerlaw.com


/s/ Peter Winebrake
Peter Winebrake
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
pwinebrake@winebrakelaw.com

# Exhibit A

**BrandPoint Services**
**Independent Contractor Agreement**
**Dollar General**

This Independent Contractor Agreement ("Agreement") is effective as of January 1, 2022, and is entered into by and between BrandPoint Services ("BrandPoint"), and the Contractor stated below. Together, BrandPoint and Contractor are referred to as "Parties" and each a "Party".

1. **General Information**
    a. Contact Information
       Contractor:                              BrandPoint:
       Name: _____              Address: 820 Adams Ave #130,
       Address: _____           Trooper, PA 19403
       Phone Number: _____   Phone: (800) 905-4342
    b. State(s) where Contractor will work (please check all that apply):

    | | |
    |---|---|
    | i. Alabama ☐ | xiv. Missouri ☐ |
    | ii. Arizona ☐ | xv. Mississippi ☐ |
    | iii. Arkansas ☐ | xvi. Nebraska ☐ |
    | iv. California ☐ | xvii. North Dakota ☐ ☐ |
    | v. Florida ☐ | xviii. New Mexico ☐ |
    | vi. Illinois ☐ | xix. Oklahoma ☐ |
    | vii. Indiana ☐ | xx. Ohio ☐ |
    | viii. Iowa ☐ | xxi. Nevada ☐ |
    | ix. Kansas ☐ | xxii. South Dakota ☐ |
    | x. Kentucky ☐ | xxiii. Tennessee ☐ |
    | xi. Louisiana ☐ | xxiv. Texas ☐ |
    | xii. Michigan ☐ | xxv. Utah ☐ |
    | xiii. Minnesota ☐ | xxvi. Wisconsin ☐ |

2. **Scope of Work by Contractor**
    a. Contractor is engaged to provide the following services: reconfigure the layout of the Dollar General Stores listed on Exhibit A (collectively, the "Project") with merchandise, equipment and supplies provided by Dollar General or Contractor, as needed. The Parties may change the scope of the Project only by a written agreement signed by both Parties.
    b. Duration of Project: January 9th-November 13, 2022
    c. Contractor will perform all tasks related to the Project at the location(s) stated in Exhibit A and will not perform any part of the Project at a location owned or otherwise controlled by BrandPoint.
    d. Contractor is expected to provide the services in connection with the Project between the hours of 7am and 5pm from Saturday through Wednesday of each week or through Friday, as necessary. Contractor is expected to provide services for two (2) consecutive weeks with one (1) week off.
    e. Contractor will perform the services associated with the Project in a good and workmanlike manner, using the degree of skill, care, and judgment consistent with customarily accepted good business practices and otherwise in accordance with all standards for performance of the services associated with the Project.
    f. During the Term, Contractor may be engaged or may continue to provide services to other entities, including providing services similar to the Project, as long as such engagements do not interfere with Contractor's performance of the Project or cause Contractor to be in

       violation of this Agreement. For the avoidance of doubt, this Agreement does not include a covenant made by Contractor for non-competition.

    g. Contractor shall obtain and maintain at Contractor's sole cost and expense any licenses or permits required to complete the Project.

    h. Contractor agrees to complete the Project in compliance with all applicable federal, state, and local laws, regulations, and rules.

3. **Responsibilities of BrandPoint**
    a. BrandPoint shall, during the Term, provide, as needed, all appropriate and necessary information to ensure that Contractor is able to complete the Project within the Term.
    b. BrandPoint will not provide any of the following to Contractor for purposes of Contractor completing the Project: (i) supplies, merchandise or equipment; (ii) labor; or (iii) any physical space or any location at which tasks or services are to be performed.

4. **Payment**
    a. As compensation for completing the Project, BrandPoint shall pay to Contractor $750__, and a bonus of $205 to cover travel and meal to and from the location of the Store(s). each week on a pre-paid card
    b. **Additionally, we will pay a bonus of $35.00 for every store that you complete. The bonus will be held in reserve and paid out ONLY if you stay on the project till the end of November and all stores are completed. In other words, if you quit, get fired or leave before all stores are completed in 2022 you will not receive any bonus.**
    c. Contractor will receive an IRS Form 1099 at the end of the calendar year stating all payments made by BrandPoint to Contractor pursuant to this Agreement.

5. **Termination**
    a. BrandPoint may terminate this Agreement prior to the completion of the Project if:
        i. Contractor is convicted of a crime involving fraud, dishonesty, embezzlement, moral turpitude, or assault;
        ii. Contractor is found to have either made a fraudulent statement or exhibited fraudulent or inappropriate behavior toward BrandPoint, including any of its owners, officers, employees, agents, or independent contractors;
        iii. Contractor engages in activities or behaviors that are not in the best interests of BrandPoint which, in the sole discretion of BrandPoint, are of sufficient magnitude to warrant immediate termination of Contractor;
        iv. Contractor dies; or
        v. Contractor becomes disabled such that he or she is unable to perform the Project for two (2) or more consecutive weeks or the Term, if shorter.
    b. If either party materially breaches this Agreement, the non-breaching party may terminate this Agreement after providing the breaching party with written notice and a thirty (30)-day cure period. If the breaching party does not timely and completely cure the breach after the receipt of written notice, the Agreement is terminated effective immediately.
    c. Either Party may terminate this Agreement without cause upon thirty (30) days' prior written notice to the other Party.
    d. **If Brandpoint has been asked by client to replace contractor or individual and services are no longer needed.**

6. **Acknowledgements:** By signing this Agreement, the Contractor acknowledges and accepts the following:
    a. The tasks and services to be performed by Contractor to complete the Project are outside of BrandPoint's usual course of business.
    b. Contractor is customarily engaged in an independently established trade, occupation, or business of the same nature as the tasks and services to be performed to complete the Project.

    c. Each Party is, at all times, acting and performing as an independent contractor with respect to the other, and nothing in this Agreement constitutes or should be construed to be or to create a principal-agent or employer-employee relationship between the Parties. Nothing contained in this Agreement constitutes or should be construed to be or to create a partnership or joint venture between Contractor and BrandPoint.

    d. BrandPoint will not exercise any control or direction over Contractor's methods by which he or she will perform the tasks and services necessary to complete the Project.

    e. Neither Party, nor any person directly employed or engaged by either Party, has any right or claim against the other Party for payment of salary, wages, and/or other compensation, or for Social Security benefits, workers' compensation benefits, disability benefits, unemployment benefits, health benefits, vacation pay, sick leave, pension benefits or any other employee benefits of any kind.

    f. Contractor shall not be treated as an employee of BrandPoint for federal, state or local tax purposes, and will not receive fringe benefits provided to BrandPoint employees. Accordingly, BrandPoint will not withhold from Contractor's compensation any federal, state or local taxes, or Social Security, Medicare or any other withholdings that an employer is required by law to withhold from an employee's compensation. Contractor shall be personally and solely responsible for paying any and all federal, state and local taxes, Social Security and Medicare and any other remittances required by law to be paid by an independent contractor.

    g. Contractor acknowledges that Contractor will not receive, and IRS W-2 form in connection with the Project or BrandPoint. Contractor shall receive an IRS Form 1099 for services performed in connection with the Project for tax purposes. Contractor agrees that if the relationship between BrandPoint and Contractor is determined by any government agency, court or other relevant entity to be an employment relationship rather than an independent contractor relationship, and such determination results in liability to BrandPoint for failure to withhold from Contractor's compensation any federal, state or local taxes, Social Security, Medicare or any other withholdings an employer is required by law to withhold from an employee's compensation, or failure to pay any contributions, assessments or employee benefits BrandPoint may be liable to pay on behalf of its employees, Contractor shall fully indemnify BrandPoint for any and all such expenses, contributions, fines, penalties, assessments, or other remittances relevant to such determination.

    h. Contractor acknowledges that nothing in this Agreement is intended to have the purpose or effect of (i) preventing the Contractor from disclosing or making truthful statements about discrimination, harassment, or retaliation during the Term; or (ii) waiving, diminishing, or requiring arbitration for any existing or future claim, right, or benefit relating to discrimination, harassment, or retaliation during the Term.

7. **Affidavit of Exempt Status under The Workers' Compensation Act.**
    a. **FOR CONTRACTORS BASED IN KANSAS ONLY:** Pursuant to KS Stat § 44-5,127 (2012), Contractor and BrandPoint agree to accurately complete and execute the Affidavit of Exempt Status under The Workers' Compensation Act as provided by the Kansas Department of Insurance for the purpose of memorializing Contractor's status as an independent contractor of BrandPoint and not an employee under The Workers' Compensation Act of Kansas.

8. **Notices:** All notices and other communications related to this Agreement must be sent by certified mail, return receipt requested to the addresses stated in Section 1.

9. **Governing Law:** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania without consideration of conflict of laws and principles.

IN WITNESS WHEREOF, the Parties have executed this Agreement on date in the opening paragraph.

| CONTRACTOR | BRANDPOINT |
|---|---|
| By: _____ | By: Melissa Pagan |
| Name: _____ | Name: *Melissa Pagan* |